**CLEVELAND HAIR CLINIC, INC., Plaintiff–Appellee,**

v.

**Carlos J. PUIG, Puig Medical Group, S.C., and Rodney Haenschen, Defendants.**

**Appeal of Michael L. Tinaglia and DiMonte, Schostok & Lizak.**

No. 97–1178.

United States Court of Appeals, Seventh Circuit.

Submitted Jan. 24, 1997.

Decided Jan. 27, 1997.

Opinion Issued Feb. 6, 1997.

Alan S. Rutkoff (submitted), Gary L. Prior, Corey Rubenstein, McDermott, Will & Emery, Chicago, IL, for plaintiff–appellee.

Juris Kins, Thomas L. Brejcha, Jr., Abramson & Fox, Chicago, IL, Stephen Schostok, William M. Dunn, Dimonte, Schostok & Lizak, Park Ridge, IL, Thomas F. Ging, Alicia Collias Schneider, Hinshaw & Culbertson, Chicago, IL, for defendants.

Jerome H. Torshen, Zoran Dragutinovich, Torshen, Spreyer & Garmisa, Chicago, IL, for appellants.

Before BAUER, COFFEY, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Last November the district court, after concluding that defendants and their lawyer Michael Tinaglia engaged in sanctionable misconduct, directed Tinaglia and his firm to remit approximately $100,000, in partial payment of an obligation still to be calculated. Tinaglia and his firm (collectively Tinaglia) filed a notice of appeal, which we dismissed for lack of jurisdiction. *Cleveland Hair Clinic, Inc. v. Puig,* 104 F.3d 123 (7th Cir.1997). Back in the district court, Tinaglia flatly refused to pay. He did not give a reason; he simply informed the court that he would not comply. The judge did not cotton to defiance and has held lawyer and law firm in contempt, adding a daily fine of $300 to the principal obligation until payment has been made. Use of the contempt power is an appropriate way to enforce a sanction for misconduct, which is not an ordinary money judgment. See *Alpern v. Lieb,* 11 F.3d 689 (7th Cir.1993). Again Tinaglia appealed. He asked us to stay the order on condition that he post a supersedeas bond. This was a condition we imposed last time—apparently without success, for if Tinaglia had posted a proper bond his adversaries would not now need his cooperation to collect. At all events, neither a stay nor a bond is appropriate, for there is still no jurisdiction. We dismissed Tinaglia's second appeal on January 27 with the notation that an explanation would follow. This is the promised explanation.

Our prior opinion gave two principal reasons why an appeal must wait. First, the amount of the sanction remains to be determined, and the award therefore is not a "final" decision. Second, Tinaglia and the defendants have been held jointly and severally liable for the sanction. Because the defendants must wait until the final judgment to file their own appeal, Tinaglia can file his own appeal at the same time and obtain complete relief, so this interlocutory appeal does not satisfy the requirements of the collateral-order doctrine. We added that the requirement of immediate payment does not make the order appealable, because the recipients are solvent and can repay if Tinaglia prevails in the end.

■ An adjudication of civil contempt used to enforce a judicial order is not appealable if the underlying order is itself not appealable. *Fox v. Capital Co.*, 299 U.S. 105, 57 S.Ct. 57, 81 L.Ed. 67 (1936); *Doyle v. London Guarantee & Accident Co.*, 204 U.S. 599, 27 S.Ct. 313, 51 L.Ed. 641 (1907); *In re Christensen Engineering Co.*, 194 U.S. 458, 24 S.Ct. 729, 48 L.Ed. 1072 (1904) (dictum); *Hayes v. Fischer*, 102 U.S. 121, 26 L.Ed. 95 (1880); *In re Rimsat, Ltd.*, 98 F.3d 956, 963 (7th Cir. 1996); *Powers v. Chicago Transit Authority*, 846 F.2d 1139, 1141 (7th Cir.1988). This principle is an essential complement to the final-decision rule. Tinaglia's conduct shows what an inroad on that rule would be made if all someone had to do, to obtain appellate review of an interlocutory order, was to defy it. Ensuing appeals would prolong and complicate litigation at the same time as they would undermine district judges' ability to manage their cases. Accepting an appeal from this decision would split a single issue into at least four appellate units: (i) whether Tinaglia engaged in any sanctionable misconduct (the only question now open); (ii) how much the plaintiff is entitled to receive (the question sure to come up on the next appeal, if the first should be resolved adversely to Tinaglia); (iii) whether the defendants also are responsible for any portion of the misconduct (a subject that they can present at the end of the case); and (iv) the allocation of liability between defendants and Tinaglia (a question that Tinaglia could present by filing his own appeal from the final decision). It was to avoid such an unacceptable multiplication of appeals, delay, and expense that we dismissed Tinaglia's first appeal—and now he is back, asking for the very thing to which we held he is not entitled.

Tinaglia observes that non-parties usually may appeal from findings that they are in contempt of court, even though parties could not appeal from identical orders. E.g., *United States Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 108 S.Ct. 2268, 101 L.Ed.2d 69 (1988); *Cobbledick v. United States*, 309 U.S. 323, 328, 60 S.Ct. 540, 542–43, 84 L.Ed. 783 (1940). Tinaglia is not a party to the case; he is not even defendants' current lawyer. One court of appeals permitted a lawyer to appeal from an order adjudicating him in contempt. *In re Murphy*, 560 F.2d 326, 332–33 n. 10 (8th Cir.1977). The rationale is simple: for the non-party, the adjudication in contempt usually *is* the "final decision" in the case; there will never be another, more conclusive, order.

Things are otherwise for Tinaglia—the point of our first opinion, which discusses at some length the significance of his status as a non-party. Matters will not come to closure until the judge determines the full amount of the sanction; and Tinaglia will have an opportunity to obtain review at the end of the case in an appeal with those who have been held jointly and severally liable with him. *Catholic Conference* recognized this exception, citing with approval, 487 U.S. at 78, 108 S.Ct. at 2271–72, an opinion holding that the non-party appeal rule "is not applicable . . . if there is a substantial congruence of interests between the nonparty and a party to the action." *In re Petroleum Products Antitrust Litigation*, 747 F.2d 1303, 1305 (9th Cir.1984) (Kennedy, J.). See also *Eastern Maico Distributors, Inc. v. Maico–Fahrzeugfabrik, G.m.b.H.*, 658 F.2d 944, 949–51 (3d Cir.1981) (an attorney may not appeal from an order requiring him to pay costs under Fed. R.Civ.P. 37). Tinaglia's interests are more than congruent with those of the defendants; they are *identical* with those of the defendants, given joint-and-several liability. We agree with these decisions, with which *Murphy* is not at odds. The eighth circuit held that an attorney served with a subpoena for documents said to be privileged may stand in contempt in order to obtain review of the disclosure order, a position with a long pedigree. See *United States v. Ryan*, 402 U.S. 530, 532, 91 S.Ct. 1580, 1581–82, 29 L.Ed.2d 85 (1971). The order in *Murphy* left nothing to be adjudicated; the sanctions against Tinaglia remain to be quantified. The order in *Murphy* was directed to the attorney as custodian of the documents; the order here is directed to attorney and litigant jointly. Disclosure in *Murphy* could not have been undone, for it would have accomplished the invasion a privilege is supposed to prevent; payment of money, in this case, can readily be reversed. Tinaglia is no more entitled to appeal now than he was a few weeks ago.

We held then, and reiterate, that Tinaglia cannot appeal until a final judgment has been entered in the case.

What is to be done with contemnor Tinaglia? The district court has imposed a daily fine, an approach originally devised to bring recalcitrant litigants to heel. But Tinaglia, a member of the bar, has a special obligation to abide by judicial orders. As an advocate, a lawyer may fight hard for a client; but in his personal capacity, as an emissary of the rule of law, counsel must set an example worthy of emulation. A lawyer dismayed by an adverse ruling must obey, however much he disagrees with its wisdom. Swift compliance is especially important when the genesis of the adverse ruling is misconduct in the litigation; refusal to make amends compounds the infraction. "It is intolerable for a member of this court's bar to thumb his nose at the judicial system [by refusing to pay sanctions for misconduct]. We have held that even pro se litigants who fail to pay sanctions forfeit their ability to continue litigating. *Support Systems International, Inc. v. Mack,* 45 F.3d 185 (7th Cir.1995). Lawyers must be held to higher standards." *In re Maurice,* 69 F.3d 830, 834 (7th Cir.1995). In *Maurice* we suspended a lawyer's right to practice in this court until he paid the sanctions assessed against him. We suggest that the district court do likewise with Tinaglia. What is more, although Tinaglia's first appeal was vigorous advocacy, it is hard to avoid the conclusion that his second reflects obduracy. We therefore direct Tinaglia to show cause, if any he has, why he should not be fined $10,000 for this frivolous appeal, and why his privilege to practice in this court should not be suspended until all sanctions (in the district court and any imposed by this court) have been paid in full. Fed.R.App.P. 38, 46(c); Circuit Rule 38. He has 14 days to file a response.